Ofer Raviv, appearing for Appellant Mark Murakami, appearing for Appellee Good morning, would you like to reserve any time for rebuttal? Yes, Your Honor. Five minutes, please. All right. Very good. Please begin. Okay. Good morning, members of the panel, Your Honorables, and for coming in. I would like to focus on the first section of the appeal in this case, which is really the court's response to the application of the under-influence standard in determining non-dischargeability under Section 523.8.4 of the Code. The focus on this is not so much about the issues that were laid out in the pre-filing file. It's actually what I think is more important is the remedy in this case. So the court really made three, what I would say, central findings. First, that in this case, the trust itself was valid. The second thing, that Marilyn's appointment, which is the defendant, a successor trustee was valid. The third one, I'm going to read it, was that Mother, which was the settlor in this case, she designated herself as the primary beneficiary of the trust and provided that as long as I shall live, I will have the exclusive right to the use and benefit of the income and assets of this trust. In other words, during her lifetime, Mother had the right to do whatever she wanted with trust assets. I mean, it could have been anything. She could have gambled it away. She could have donated. She had absolute discretion to do whatever she wanted with it. And more importantly, she also had the absolute right to authorize Marilyn, as the trustee, to make distributions out of the trust. Another thing is not in dispute. Wouldn't all of this have been much more persuasive if the probate court had not found, and we are bound, as I understand it, that there was a breach of fiduciary duty here? The breach of fiduciary duty in this particular case, if you look at the court's order at the probate level, it really has to do with the lack of accounting. The court did not make any findings regarding how to... Well, that's a chicken and egg situation, isn't it, right? I mean, the lack of accounting leads to no comfort as to the use of the funds. So, the lack of accounting is the controlling act from which all the ramifications follow, both in the probate and ultimately in Judge Ferris's decision, isn't it? I disagree. And I think in this particular case, if you really look at our probate decision, all the standard had to look is whether she discharged her duties as a trustee. And the court says, you know, you didn't provide the proper accounting. All we're doing is removing you as a trustee. Now, we're going to assign the court to figure out what really happened there because there was no evidentiary hearing, that there was nothing there presented to the court in a sense of determining what or any of the charges here, which is really the crux of it, were actually reasonable or authorized. The court didn't make any of those findings. The court said, you don't meet the standard as a trustee, therefore, we are removing you. We're going to appoint a different successor trustee in this case. You are no longer the trustee. And you violated your fiduciary duties, which is the reason why we're appointing a successor trustee. Right. But that is you discharge, correct, your duties as a fiduciary. But we are not talking at all about what are the remedies. What does that mean? Does that mean that all your actions are reasonable? It's possible that you didn't have any accounting at all. You did a terrible job of this trustee. But it doesn't it doesn't change the fact that the actual spending of the money, because reasonable or authorized. That is two different things. The court in I guess I decided that. Right. And that's because the bankruptcy was filed and it shifted over to the non-dischargeability. Right. And essentially that decision was actually happened right here by Judge Ferris in this in front of in this action, because otherwise it could have been differently. In this case, we could have had the I forget the term for it, an appropriate court. But the point is that the court could have issued a judgment saying this is X amount of dollars that you have. You are under the under the standard of negligence. OK, you are negligent and you owe X amount of dollars. And then all all we would come here in the bankruptcy court to determine the non-dischargeability is really the culpability of those actions. But what happened here is all the court did said you are no longer the trustee. I'm removing you. Now, let's see what happens next. And the bankruptcy was filed, correct, which stayed that action. And now everything, really all of it was determined in this particular case. That is correct. Now, it is not a dispute that plaintiff never argued or even mentioned the under influence standard in their briefs. Anyway, it's just simply nowhere to be found. Nor factually argued that Marilyn exercised under influence on her mother to approve or disavow the funds. The record clearly shows that an employee in her response brief does not deny it. So I think at this point it is what it is. It was just never argued. The court's reliance on under influence standard in this case, a violation of defendants constitutional right to due process on the principle of body representation. Well, again, I think for what I've read the record and coming to it, the undue influence is a term that Judge Farris used and dropped into a footnote. The mother's capacity and capability was litigated. Right. I mean, that's why all the medical records were in there. That's why the notes are in there. That's why the letters were introduced. That's a substantial litigation of the mother's capacity. Whatever you want to call it at the end is what you call it. But that factual matter was squarely placed into, you know, into the contest, wasn't it? The factual issue overall, yes, but the issue of under influence, which is central to the decision, and it is way more than a footnote. It is way more than a footnote. I don't have time right now to go over it all a bit. But if you and I'm sure you have go and you look again at the final second finding of facts and conclusion of law, this is far from a footnote. That is actually central because of the standard of defalcation. There are different standards that you can go around it. How to how to how to how to analyze it. One of them is under influence. It is the problem here. It was never argued. But you're putting a label and Judge Farris put a label on it. If you why is the label determinative and you are arguing was error, clear error, as opposed to the capacity which was clearly litigated, the capacity was litigated. But again, if you look at this caseload that is being cited in support of the standard itself, the standard itself, the action was not for undue influence. This was not a claim for undue influence. The claim, the litigation, as you mentioned, was for defalcation with the requisite intent. That's all that was trial. It was. Do you do you believe that is necessary that Judge Farris find that he could not award a judgment for non-dischargeability absent the undue influence? Yes. Why? What's your case for that? So I'm going to go through that a little bit. OK, so I'd like you to get to it. You've got about seven minutes. I want you to reserve as much time as you can. So if you could address that, I'd be interested. Yes, because in this particular case, I'm going to jump a little bit further. I'm just going to quickly skip on my note. The sole argument of the plaintiff in this case was that Marilyn discharged as a trustee by intentionally misappropriating funds for her for herself and family's personal use. Her sole argument all along has been that all of her actions were at the instructions or requests of her mother or expressly or impliedly authorized by her. That was her position. OK, in Section C of the conclusion of law and determining Maryland's center, the following key finding Maryland attempts to justify as many of our expenditures by claiming that mothers authorize them. But the trustee should not be allowed to follow the discretion of the floor beneficiary if there are reasons to doubt the validity of the instructions or the authorization. This is part of the legal standard. That's where it's coming from. Marilyn knew that her mother stayed in decline and that her mother totally depends on Marilyn's undue influence over her mother. And here is the key. Even if mother authorized some or all of the expenditures, Marilyn was not entitled to rely on his instructions. The reason I say is the key to this is this. If the court agrees, if the court agrees with our position, which is that this issue was raised through Sponte and meaning the issue of the legal standard of undue influence, that is that is addressed by the court. And it is central to the finding. If you take that out, you end up with a finding of facts that are really saying what the court is saying here. I don't know whether Marilyn acted on her own or her mother authorized it, but it doesn't really matter because either way, she's on the hook because she either acted maliciously on her own or exercised undue influence over her mother. If you take if you look at the finding of facts the way they are right now, and you understand that this was never argued, the court relied on the wrong legal standard, which is undue influence that was never briefed, should never have been allowed to use that in this case. Again, it's a legal standard and it is not a footnote. It is central. So why why? OK. Why were the medical records, the notes, the letters, why were they introduced? What was the relevance of that? Why weren't they excluded? I think I don't see how they would be excluded. I think it's the overall. Why? Why were they relevant? They were relevant overall to show, like to me, it's the totality of circumstances when you want to look what really happened there. That's how that's how I view it. I mean, so but then wouldn't Judge Ferris be entitled to make a conclusion based on the totality of circumstances, including all these medical records that the mother mother's health was was in decline, her mental health was in decline. He was able to make those those findings of facts. Yes. But the legal standard that was used was under influence because, again, even if you conclude, I'll take it to the extreme, I'll take it to the extreme. And I'm just running out of time here at this point. I take it to the extreme and I say, Marilyn, in this particular case, I'm sorry. That's all I guess I just want to clarify that if you're right. And you didn't have the opportunity to address the question legally, then what you're asking us to do is remand back to Judge Ferris to have him read to reconstitute the trial, give you notice of the claim of undue influence and retry the case. That's what you want us to do. Actually, no, I don't think it's the correct remedy. I think it's better than than denying this appeal. I think that's what I think the correct remedy in this case, that this panel, as a matter of law, can issue a decision for the defendant, because, again, I don't see why plaintiffs should have now all of a sudden a chance to bring up something that they had a chance in the first place. But they brought up that she had memory issues, was confused. There is a diagnosis in several instances of senile dementia. None of that matters under your view, correct, because those are factual issues. But the legal standard we were never the facts have legal consequences, which is ultimately what it sounds like. Judge Ferris found he had I will put it differently. I don't want to go too far and say if this was argued, if it was truly argued, I would have a much harder time arguing this on this issue. But again, the whole disposition of the case would have been different. There was a motion for summary judgment. There was so many issues that there's a reason like due processes. There's a real there's a reason it is a constitutional right. It's a constitutional right. We cannot just glance over it and say, well, it's harmless. No big deal happened here. No, it is a very big deal. I don't know as bankers of counsel. I mean, I'm sitting there and I have to assess when I present my client, what are the best chances? Who knows? Maybe it would have presented. Maybe I would have expected it and told my client, you know, this is a problem. Who knows? There are so many things we could have dismissed the bankruptcy. I'm sorry. A lot of things could have happened, but we were not given the chance. And in fact, I don't see why plenty of now answering judge just Judge Gans question should be allowed to go back now and argue it, not to mention it is the same trial that helped me like I have because counsel, because you argue that it's a due process by you are not on note that this issue would come up. The evidence came in. The question is, if you weren't aware of the theory, are we supposed to reverse the decision and enter judgment for your client or remand and say they didn't have the opportunity to address the legal issue? Give them the opportunity. Correct, but I don't see why this should be given the opportunity where it doesn't change the finding of fact, let's assume, let's assume we go back again, I don't see why they should be allowed to argue something. This is different than saying, you know, you miss the court, you remand the usual case, you use the wrong legal standard. No, this is different. This is you. You injected a legal standard that was never argued in the first place. It's very different. And that's why I say, as a matter of fact, as hard as it is, and we really need to this is a difficult thing to try to ignore what's going on here and understand it's almost a math equation. You take that out, the whole everything. And but you say the finding of facts, the finding of facts, there is no reason for him to second what is just first going to change his finding of facts based on based on now presenting with it now. And I said, you cannot use that standard or not. I think, again, this is a procedural due process that is the core of this argument. And I'm seeing I have 20 seconds left, so. All right, thank you very much. Thank you. Morning, honors, may it please the court. Turning to the due process issue that counsel just argued, due process is what takes place in a court when litigants are represented by counsel. We see he got her due process. We had a four day trial. She was represented by able to able Bankruptcy Council. We've all presented the claims and arguments and defenses. All the evidence came in. There were no motions eliminate. And she had her day in court. And I suggest to the court that that constitutes due process. Do you believe that Judge Ferris was required to find undue influence to make his ultimate conclusions about the center supporting the non-dischargeability claim? No, sir. The two counts before the court were first the surcharge against the trustee, which was pending in state court. And we brought that as an adversary money judgment action as a court proceeding in this courthouse. The second is to address. Excuse me, I have long arms and wandy mics. The second issue was and the Bullock is not the model of assistance to guide trustees who face these situations and up in bankruptcy court. And nevertheless, that is the law. That's the law in the circuit. And so we presented a case. We actually sought summary judgment in this case, arguing that the breach of fiduciary duty was litigated in probate court. And I said to the court in a supplemental exit to record at 108 that the trustee did breach and violate her fiduciary duty. That was an unappealed finding in probate court. Second, the other probate court finding was that the trustee had misappropriated and misused trust funds. So that was the state of the law and the case in probate court, both of which findings were a preclusive or we argued should be preclusive in this court. In light of Bullock, Judge Ferris said no. He granted the issue preclusion for that. Mrs. Sigi was the trustee and that it was expressed trust. But the issue as to her state of mind was plainly litigated. Now, this is Felipe's state of mind and mental decline was germane and factual to the extent that Mrs. Sigi, the debtor, knew about it. And that's what the lens that Judge Ferris's decision should be seen from. And he exhaustively went in page 18 through 20 of the findings of fact, all the mental decline that started in 2014. In 2016, the House was sold. Later that year, the lawsuit settlement, $275,000 went out to settle a lawsuit that was pending against Mrs. Sigi, her husband and her children. And so all those facts relating to the mental health of Mrs. Felipe, the set law was only germane and relevant to Judge Ferris's findings that Mrs. Sigi knew exactly what she was doing. And she was the most intimately aware of what was going on with Mrs. Sigi's mental state. And so it was largely just to counter or rebut Mrs. Sigi's continued assertions that every transaction, every lawsuit settlement, the house construction project, the car, all those trust expenditures were not. And that explains why Judge Ferris didn't believe that they were the result of gifts or express direction. And so it's only through that lens, I think, as almost a belt and suspender saying that even I think what Judge Ferris is saying is even if she did say that, you weren't entitled to listen to that because of Judge Ferris's findings that her mental decline was so those instructions. And it only is germane and relevant to what Mrs. Sigi knew. I think it's clear that Judge Ferris established in his very lengthy and cogent decision that she knew what she was doing and it was intentional. And this was not like Bullock, where a nonprofessional trustee gets a load of cash. All of a sudden you're ominous, dominoes the trustee. Oh, I didn't know what to do with it. And harm happened. That is Bullock. This is not Bullock. This is two years, nine hundred thousand dollars being expended. This is commingling of trust funds and personal funds. This is massive subsidies of their husband and wife's business. This is a construction project that expanded their own personal house with Mary, a note putting the trust on title or any way to protect the trust beneficiaries from these This all comes back down to counsel's point, which is, you know, much of this is very simple. You point that this was wrongful and benefited the debtor. She says it was authorized. And that that gets us to the undue influence. So what is the relationship between your point is that she really couldn't authorize it, which it seems Judge Ferris put under the label undue influence. So let me kind of unpack that a little. Judge Ferris has an entire section of his decision that says mental state and her intent. And the words undue influence don't appear in that section. So that's where I first invite the court to look at as to his core findings. So and that's the point I think I was trying to make, is that if the words undue influence. I never used in Judge Ferris's opinion, is it erroneous? I don't think you're sitting in his courtroom, so I don't want to say anything he did was erroneous. But I don't think he needed to say those words in order for us to win. And why is that? Because at the core, the two claims that he was we were litigating were the amount of the surcharge in light of the probate court findings, etc. And her scienter vis-a-vis the transactions and her conduct and all the monies that were taken from the trust. Those were the two core issues. Undue influence is classically if we had an undue influence claim in this case, we would be challenging the trust. And classically, the way undue influence claims get brought here are there is a challenge, trust or will instrument which disinherits kids or favors one child. And so the civil claim is undue influence saying that instrument should not be valid because of the proving up in the Herbert factors which are in the footnote of the decision. That's not our case. We didn't have to prove that at all. The probate court said breached fiduciary duties, misuse of trust funds, surcharge as appropriate. Go have a trial as to the amount of the surcharge. We had that trial in this courtroom, and that was what all the evidence was. And the judge went through and volumes of information was submitted to Judge Ferris to prove up the amount of the surcharge. And he made a finding that he included his undue influence, I think, is almost a storytelling, legal storytelling of his way to analyze what he heard in court. He had strong opinions about the testimony he heard, and he had comments in the decision about family dynamics and the like. None of that is germane to the actual request the plaintiff made in these proceedings, amount of surcharge and to satisfy Bullock and assigned her that none of these transactions were taken by, you know, were made by negligence. Yes, sir. Just to clarify. So that it appears that what you're suggesting is. That the the the problem or the issue for Judge Ferris was. Whether Ms. Cassidy's explanation for her use of the funds was he didn't believe her, find her credible, and then he backed it up with even if you receive these instructions from the testator or the the the grant. You shouldn't have relied on them because she wasn't capable and you knew she wasn't capable, so I don't believe your explanation number one and number two, the evidence doesn't support. The conclusions that you want me to reach. Her the medical records and other evidence suggest he was in common. Is that the summary of your argument? Yes, your honor.  I'm sorry, your honor. I just want to make sure I understood it that. Yes, sir, and candidly. These types of cases, you know, under influence and and fiduciary duty are the vernacular of these types of cases, and so, when I went to the transcripts, you know I did see a reference on to influence in the summary judgment hearing that was brought up, not by me, but by. Counsel, and so we are talking about a post death probate and trust dispute, and so these types of terms are part of the vernacular, so it's not surprising that judge Ferris would include that, however, at its core, so that's first explicitly found as fact, and I don't think there's any showing that there's clear error that. He didn't believe her and she sat there and said mom told me I could do this mom told me I could do this mom told me I could do this and judge Ferris didn't believe her and that's in his decision that he said on the on the you know, even if what I think what the conclusion of law can be fairly right to say is even if what she said took place is true, I don't believe you know there's just no way it was under my influence she was. A demented 90 plus year old woman living at her house, the primary caregiver was Mississippi, and so I think it's fair to say that. And I think the judges Paris's ruling should only be read to say that it's the contradicting the the third and tertiary Defense, I want to move you past that to the surcharge aspect, as you indicated. Because when you read this and judge first struggle with this and it's pretty clear from the transcript, you know, he meant that there was some reasonable expenses there there had to be. And there's a tension there because. Of the record, it is difficult to understand exactly what and judge Ferris relied upon that, but how do you first of all, what is the $15,000 credit from the first found that there were gifts made which that were backed up with documents, which ones, I mean, I could not find that in the in the record, did you do you are you able to identify which. Okay. Is that a problem here, I mean it goes to the appellants the debtors arguments that. Everybody recognizes that there was some expenses that were reasonable. I agree, your Honor, however. Trustee having trust funds the burden is upon them to show with receipts with whatever to say look i've done a calculation here's an expert witness on what the fair market value of caregiving in the state of Hawaii is all that is her burden to show. First off, let me take a step back the calculation of damages is largely a trial court function, and so there is was evidence that and the Mississippi you did testify about gifts that were made, and so there were a lot of there were thousands of transactions, they were commingled funds, there is no way to know how much was social security money coming in. Well, I mean judge Ferris the solution was basically put that aside right because he basically looked at the funds coming from the sale of the House. Ultimately, that that was his he took that that was the basis, so the ones before and anything before the sale of the House really falls to the side. That is not what she is being surcharged. No, but I guess my point is that her she was able to live on living expenses from social security, which I think was in the record $800 a month. Is it though, because you you review the bank records and again this confusion as to which banker was her which which which account, but there's deposits made that are just unidentified deposits. And then, if you go to the accounting, which I understand is a little bit iffy based upon the weight that judge Ferris gave it either are reimbursements fairly contemporaneous with the receipt of the money, which seems to suggest there. They could be read to be reimbursements for the expenses that the Sissiggis made, so how is that reconciled? Let's let's kind of take it take us out of the bullet lines and let's just go into the classic probate courtland. If you are named trustee of your parents trust the prudent thing to do is to open up a bank account in the trust name. Get an employee identification number to the tax returns treat those funds as not yours. Such that if there's ever a challenge by one of your siblings saying hey you know you drive a new car did use mom and dad's trust funds for that no here is the bank statement. Here is the accounting here are the transactions here are the monies in here are the monies out here's the backup, and that is what the accounting that we saw it in probate court and which the court ordered her to produce and was never done. And so I would posit to the court that what was given to judge first was not an accounting, it was a data dump of financial records and transactions, leaving it up to judge first to figure out well how much of it was her food, how much of it was your doctor copay etc. And I think it's fair to infer that since she lived on social security in her house before she moved in with Miss Sigi that that is the burn rate of which her living expenses food expenses doctor visits parking whatever gas is, and so I think that's why that ultimately we didn't litigate and it wasn't really brought in the impact of social security to cover those living expenses and so that's why I think it's fair to infer that. Just first of all you know the burn rate of her living food etc. is social security and so the book of litigation was over the proceeds of that house and the big transactions the $275,000 fraud lawsuit the $220,000 construction lawsuit you know. Huge dollars going out the door that I don't know you know that that was what the trial was about and the trustee has never said you know oh that might be if you whatever but I at least get this dollar amount she's she told the probate court and she told judge first in the trial and even in this court she's entitled to everything. Mom said I could have it I was the trustee you know here you go here's the volume here's 10,000 pieces of paper judge Ferris. Somewhere in this piece of paper is a reasonable claim for caregiving food gas whatever and left it up to judge first do he went through and he found $15,000 of gifts there were tons of there was gifts hard to say whether those were gifts from Mrs. Sigi for whatever reason whether they're reimbursements for whatever we just don't know all we have are you know canceled checks. All right thank you thank you your time is up so thank you for your argument. Right and this matter will be submitted. We got 21 seconds that's right I'm sorry. Oh deadline no no no that's okay. That's a balance I forgot about I've apologized for forgetting your 21 seconds please go ahead. Mr. Murakami called judges first of the finding is a legal storytelling it is not a matter of due process if you look at it doesn't matter what all the background noise is in the background and how big of these numbers are it doesn't change the simple fact he could not determine whether she acted on her own or with her mother's authorization is he cannot that's that's the that's the bottom line he cannot figure out whether it was happen either a or b and if you take out the under influence which was central to the decision the decision in this case has to be as a matter of law judgment for the defendant thank you very much thank you all right now this matter is submitted.
judges: BRAND, SPRAKER, GAN